(C.D. 2418)

LILLI ANN CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 31, 1963)

*Barnes, Richardson & Colburn* (*Edward N. Glad, E. Thomas Honey,* and *Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector, Richard E. FitzGibbon, Alfred A. Taylor, Jr.,* and *James F. O'Hara,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This cause of action relates to the importation of certain wool fabrics, classified by the collector of customs under the provisions of paragraph 1529(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, covering fabrics, wholly or in part of fringes, and assessed with duty at the rate of 45 per centum ad valorem.

Plaintiff claims said merchandise is not in part of fringe and is, therefore, properly subject to duty at the rate of 37½ cents per pound and 25 per centum ad valorem under the provision for woven fabrics, weighing more than 4 ounces per square yard, wholly or in chief value of wool, as provided for in paragraph 1109(a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The pertinent text of the statutes involved herein is set forth below:

Paragraph 1529(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade:

Articles (including fabrics) wholly or in part of any product provided for in paragraph 1529(a), Tariff Act of 1930:

    *       *       *       *       *       *       *

Wholly or in part of * * * fringes, * * * if not in part of lace and not ornamented (except * * *) _____ 45% ad val.

Paragraph 1109 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, regardless of value_____ 37½¢ per lb. and 25% ad val.

The record, in the instant case, consists of the testimony of one Adolph P. Schuman, president of the plaintiff corporation, as well as a sample of the imported fabrics, received in evidence as plaintiff's exhibit 1, a lady's coat manufactured from such fabrics, which was received in evidence as plaintiff's illustrative exhibit 2, and one photographic exhibit of an advertisement depicting a lady's suit, received in evidence as plaintiff's illustrative exhibit 3.

The witness testified that he is president of the plaintiff corporation, whose business is the manufacturing of women's coats and suits; that he is now chairman of the World Trade Authority for the State of California; that he is past-president of the National Recovery Board; that his background includes serving as an expert for the National Recovery Board, the United States Government, and the United States Navy; that he served as an expert for the United States Government and assisted in the restoration of the French woolen mills, for which he received the Legion of Honor Medal; that, in addition, for his work with the Italian mills, he was decorated with the Star of Solidarity; that he became familiar with this merchandise through one of his friends, who is a New York manufacturer and who subsequently took him to the wool supplier in France. The witness then testified that the imported fabrics came in rolls of approximately 50 meters long and were approximately 54 inches wide, having a selvage on both sides; that he personally saw fabrics of this type being manufactured in the mills while in France; that the fabrics are a mixture of wool and certain fur fibers, which are woven in the regular manner with the spindle going through the warp, the spindle being a hand-spindle, rather than a flying spindle; that the cloth is thereupon sent to Paris for dyeing and then finishing; that the fabrics are put through a finishing roller and, as they come through the roller, certain lines or warp threads are cut, forming the so-called ornamentation; that this cutting was systematically done at intervals across the fabrics, causing a portion of the threads of the fabric to hang loose on one side and remain anchored in the weave at the other; that all of this merchandise was purchased by him with no intention of using it as a fringe, but for the manufacture of garments; that he had never seen nor heard of anyone ever using this type of fabric in any other manner.

Mr. Schuman testified that, in his 23 years' experience, he had become familiar with the term, "fringe," and that his understanding was

that it was used to ornament or to edge a garment; that he had read the definitions in the case of *Davies, Turner & Company* v. *United States*, 39 CCPA 76, C.A.D. 476, and that he agreed with the definitions contained therein; that the only border on exhibit 1 is the selvage; that this cut edge of the fabric is done for ornamentation in the same manner as a plaid would be woven into a fabric, namely, to enhance the beauty of the material; that a fringe is never part of the material, but is sewn on in a manner similar to lace.

While the description of the manufacturing process is rather sketchy, an examination of the fabric and the description of manufacture appear to establish that the extensions of the warp thread at the so-called lines and the subsequent cutting free one end of these threads created an article similar to the "fringe" in the cases involving mufflers in *St. Andrews Textile Co., Inc.* v. *United States*, 32 CCPA 117, C.A.D. 294, and *Rogers Peet Co.* v. *United States*, 42 CCPA 221, C.A.D. 597.

In the *St. Andrews* case, *supra*, bolts of woven wool goods, intended for use as mufflers, having weft threads omitted at intervals to indicate length and form a fringe, were held to be properly dutiable under the provision for articles in part of fringe in paragraph 1529 (a) of the Tariff Act of 1930, rather than under the provisions of paragraph 1115 (a) of the Tariff Act of 1930. The court therein held that a fringe for tariff purposes could include *those* manufactured at the time the article was being manufactured, citing *Alfred Kohlberg, Inc.* v. *United States*, 27 CCPA 354, C.A.D. 111.

In the *Kohlberg* case, certain gloves having lace cuffs, which lace was created at the same time as the gloves were manufactured, were held to fall within the purview of paragraph 1529 (a) of the Tariff Act of 1930. The question of the applicability of the preexistence rule was thoroughly discussed and found not to be applicable to "articles * * * in part," under paragraph 1529 (a) of the Tariff Act of 1930. The court therein stated:

* * * It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, and the language of the provision, we think, clearly implies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself. * * *

A lengthy and learned discussion of the preexistence rule and the case of *Cohen & Lewis* v. *United States*, 25 CCPA 220, T.D. 49335, is contained in the above decision.

In the *Rogers Peet* case, *supra*, individual mufflers, having a fringe produced at the same time the mufflers were produced, were held to be in part fringe, for the reasoning given in the *St. Andrews* case, *supra*.

It is, therefore, reasonable to conclude that the extension of the warp thread produced on the involved material, in at least the manner of production, is a fringe for tariff purposes. Whether a fringe for tariff purposes must be an edge or border is the remaining question to be determined.

*Davies, Turner & Company* v. *United States*, 39 CCPA 76, C.A.D. 466, cited by both parties and relied upon by plaintiff, contains numerous definitions of the term "fringe," set forth as follows:

*Century Dictionary & Cyclopedia (1911)* * * *

1. An ornamental bordering formed of short lengths of thread, whether loose or twisted, or of twisted cord more or less fine, variously arranged or combined, projecting from the edge of the material ornamented.—Fringe may consist of the frayed or raveled edge of the piece of stuff ornamented, but is generally of other material, often made very solid and ponderous, the cords being of tightly twisted silk or of gold or silver thread of considerable thickness and length.

*Webster's New International Dictionary (1920)* * * *

1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

*Webster's New International Dictionary (1928)* * * *

1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

*The New Century Dictionary (1929)* * * * An ornamental bordering having projecting lengths of thread, cord, etc., either loose or variously arranged or combined; also, anything resembling or suggesting this (as, a *fringe* of hair over the forehead; a *fringe* of trees about a field); a border or margin.

*Funk & Wagnalls New Standard Dictionary (1931)*

1. An ornamental border or trimming of pendent cords, loose threads, or tassels.

*Webster's New International Dictionary (1934)*

1. An ornamental border or material for borders consisting of projecting ends of a fabric twisted or plaited together, or of loose threads of wool, silk, linen or strips of leather, etc., on a band of the same material.

*Funk & Wagnalls Standard Dictionary (1941)*. An ornamental border or trimming of pendent cords, loose threads, or tassels.

Based upon these definitions, the court held the cheesecloth involved therein not to be in part fringe, because the fringe was not ornamental. In the case at bar, the so-called lines with extension of warp threads were for style. However, plaintiff herein relies upon the fact that they are not borders or material for borders. The record contains ample testimony, and illustrative exhibits 2 and 3 also show that suits and entire coats are made of the imported material and that they are not border or border material.

In addition to the foregoing definitions set forth in the *Davies, Turner* case, *supra*, we have reviewed the Summaries of Tariff Information, 1929 and 1948, which make the following comment on fringe:

Summary of Tariff Information, 1929:

\* \* \* Fringes are trimmings which are straight or indented on one edge and have ends hanging down on the other; these hanging threads are in some cases knotted by hand. \* \* \*

Summaries of Tariff Information, 1948:

Fringe.—A form of woven trimming with one edge straight or scalloped and with loose threads hanging from the other edge, these latter usually knotted together in groups by hand. The straight or scalloped edge is sewed to the article to be ornamented. In contradistinction to such applied fringes there are also fringes which are an integral part of the article, made by projecting warp ends which are usually knotted in groups by hand.

Consistent with the lack of the requirement that fringe must be utilized on borders or as border material, is the definition set forth in "The Modern Textile Dictionary," published by Duell, Sloan & Pearce, Inc., 1957 edition:

A trimming consisting of long or short projecting ends either applied or worked from the fabric itself. Usually found on curtains, drapes, sashes, uniform embellishments, etc.

Based upon the foregoing and the record as made herein, we are of the opinion that while fringe may be used on a border or as border material, it is not limited to said use. It is ofttimes said, in the field of customs jurisprudence, that a sample is a potent witness. An examination of the sample of the cloth and other exhibits convinces this court that the involved fabric is in part of fringe and is, accordingly, subject to classification under the provisions of paragraph 1529(a) of the Tariff Act of 1930, as modified, *supra*, as classified.

The protest is, accordingly, overruled. Judgment will be rendered accordingly.