Surely, plaintiff has not borne its dual burden of proof in establishing that its claimed classification of the merchandise is correct, and that the classification of the customs officials is erroneous.

In view of the foregoing, the protest is overruled, and the classification of the dadoed doorjamb sets under item 207.00 of the Tariff Schedules of the United States, as articles not specially provided for, of wood, is affirmed.

Judgment will issue accordingly.

(C.D. 4384)

INTER-MARITIME FWDG. CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 5, 1972)

*Allerton deC. Tompkins; Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel), associate counsel; for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*John A. Winters* and *Herbert P. Larsen,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges; NEWMAN, J., concurring

RAO, Judge: The merchandise involved in this case consists of scarves of mohair and wool imported from Scotland on or about November 12, 1967. It was assessed with duty at 42½ per centum ad valorem under item 372.10, Tariff Schedules of the United States, as scarves, ornamented, and it is claimed to be classifiable at 21 per centum ad valorem and 37½ cents per pound under item 372.45, as scarves, not ornamented, of wool, not knit, valued over $4 per pound.[1]

It was stipulated at the trial that the merchandise is not knit and is valued at over $4 per pound.

A Customs Laboratory Report (exhibit 2) states that a sample of the imported scarves (exhibit 1) is composed of mohair, wool, and a small amount of man-made fibers (approximately 5%).

Exhibit 1 is a scarf of variously colored yarns, primarily red, woven into a design, with fringes on each end and with short protruding weft threads on the sides. According to the record, the scarf was produced from a piece of cloth in which the weft threads were omitted at predetermined intervals. Individual scarves were cut from the piece so that loose ends of warp thread were left at each end of the scarf. No stitching or binding appears on the ends of the scarf nor have the fringes been knotted or plaited or otherwise manipulated.

The primary issue is whether a scarf with fringes formed in the process of producing it, which fringes have not been manipulated further, is classifiable under the tariff schedules as an ornamented textile article.

Under the Tariff Act of 1930, it was consistently held that scarves and other articles produced in this manner were classifiable as articles in part of fringe. No differentiation was made between fringe pro-

---

[1] It appears from the official papers that the entry was liquidated within 60 days after appraisement. Since no appeal for reappraisement was filed by either party, the appraisement has become final and the liquidation is valid. *National Silver Co.* v. *United States,* 59 CCPA 185, C.A.D. 1064 (1972).

duced in the process of making the article and fringe added thereafter. *St. Andrews Textile Co., Inc.* v. *United States*, 32 CCPA 117, C.A.D. 294 (1944); *Rogers Peet Co.* v. *United States*, 42 CCPA 221, C.A.D. 597 (1955); *Akawo & Co., Inc.* v. *United States*, 6 Cust. Ct. 370, C.D. 498 (1941); *Lilli Ann Corporation* v. *United States*, 51 Cust. Ct. 121, C.D. 2418 (1963), *apppeal dismissed*, 51 CCPA 129 (1964); *Broadway-Hale Stores, Inc.* v. *United States*, 63 Cust. Ct. 194, C.D. 3896 (1969). See to the same effect *Alfred Kohlberg, Inc.* v. *United States*, 27 CCPA 354, C.A.D. 111 (1940), as to articles in part of lace.

Plaintiff claims that a different result is required under the pertinent provisions of the tariff schedules, which read as follows:

Schedule 3 headnotes:

    \*        \*        \*        \*        \*        \*        \*

3. For the purposes of the tariff schedules—
    (a) the term "ornamented", as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

    \*        \*        \*        \*        \*        \*        \*

    (iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

    \*        \*        \*        \*        \*        \*        \*

    (v) any combination of the foregoing types or methods of ornamentation;
    (b) ornamentation of the types or methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—
    (i) when it was in the piece.
    (ii) after it had been made or cut to a size for particular furnishings, wearing apparel, or other article, or
    (iii) after it had actually been incorporated into another article,
and if such textile fabric remains visible, at least in significant part, after ornamentation: *Provided*, That lace, netting, braid, fringe, edging, tucking, trimming or ornament shall not be required to have had a separate existence from the fabric or other article on which it appears in order to constitute ornamentation for the purposes of this headnote; \* \* \*

    \*        \*        \*        \*        \*        \*        \*

Schedule 3, Part 6, Subpart B:

    Mufflers, scarves, shawls, and veils, all the foregoing of textile materials:
        Lace or net articles, whether or not ornamented: ornamented, and other articles,

        \*        \*        \*        \*        \*        \*        \*

| | | | | | | |
|---|---|---|---|---|---|---|
| 372.10 | | Other [than veils]_____ | | | 42.5% ad val. | |
| * | * | * | * | * | * | * |

Other 'articles, not ornamented:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Of wool:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Not knit:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |
| 372.45 | | | Valued over $4 per pound. | | 37.5¢ per lb.+ 21% ad val. | |

Plaintiff claims that the scarves herein are not ornamented within the meaning of the tariff schedules since no ornamenting work has been applied to the scarves themselves or to the scarves in the piece, and that the protruding threads in the form of fringes formed in the process of cutting apart the fabric to produce the scarves do not consist of ornamenting work for tariff purposes.

Defendant contends that the merchandise is a fringed scarf; that the fringe serves an ornamental purpose, and that by virtue of headnote 3 to schedule 3, *supra*, a fringe upon an article constitutes an ornamentation.

In addition to a sample of the merchandise and the Laboratory Report, plaintiff introduced into evidence a deposition of Elliot Dryden, secretary and administrative director of Gibson & Lumgair, Ltd., marketing division of Bernat Klein, Ltd., producer of the imported merchandise, and called as a witness Bernard J. Sissens, vice-president of Ashton Imports, Ltd., importer of the instant merchandise. Defendant produced a number of samples of fringed articles and called Dr. Lazare Teper, economist and statistician, in charge of research for the International Ladies' Garment Workers' Union, and Mr. Lou Ratner, secretary-treasurer of Apparel Trimming Corporation, manufacturer of dresses, trimmings, and accessories.

Mr. Elliot Dryden stated that the different colored yarns used to produce the pattern are an integral part of the scarf as are the fringes. The fringes are of sufficient length to prevent the weft threads in the scarf from fraying without the use of a binder thread. Reduction in length of the fringe and use of a binder thread would be possible, but would increase the cost of the scarf. In his opinion, the fringes ornament the scarf giving it a finish which a scarf without fringe lacks.

The witness Sissens stated that the scarf before the court is not ornamented. To decorate a scarf, he said, would require additional work, such as tieing or plaiting, grouping the ends so as to identify them as a decorative feature, or appliquéing tassels or other ornamentation to

the scarf. In the instant case no ornamentation was applied to the scarf before or after it had been cut from the piece.

He stated that if the fringe were not on the scarf, the ends would ravel. The fringe serves a utilitarian purpose by indicating the place where the fabric is to be cut to form the scarf and by preventing fraying. He admitted, however, that the fringe portion is designed to be attractive and enhances the aesthetic look of the garment.

In his view, an "ornament" is something which is added to, applied to, or attached to a garment in order to decorate it.

Dr. Teper described four types or categories of fringe: Fringe produced (1) in the process of fabric manufacture by omitting the wefts over a certain length; (2) by pulling threads out of a finished product by means of a needle or metal brush; (3) by pulling threads through the finished edge of a fabric with a large needle and cutting the resultant loops to a desired length, and (4) by sewing on to the fabric narrow bands of material with fringes already attached.

It is plaintiff's claim that under the definition of "ornamented" in headnote 3, *supra*, "ornamentation" for tariff purposes requires "ornamenting work" and that no work of ornamentation has been performed on these scarves because the fringes came into being in the process of creating the scarf itself. In other words, it is claimed that to constitute ornamentation, there must be something additional applied to the scarf or the fabric. Plaintiff draws a distinction between the words "pre-existing textile fabric" and the words "separate existence" and contends that "[t]he latter words are applicable to such things as fringes which can be ornamentation without being 'separately added'; there can be fringes produced by the 'ornamenting work' of removing end threads, by cutting across loops, by plaiting or tieing together the protruding end threads, etc., none of which require the fringe to have had a separate existence, and all of which require additional 'applied' effort." (Underscoring omitted.)

Defendant concedes that, generally speaking, under headnote 3(b), *supra*, ornamentation consists of ornamenting work done to a pre-existing textile fabric. It claims, however, that the proviso in subsection (b) constitutes an exception to the general rule, so that fringe is not required to consist of "ornamenting work done to a pre-existing textile fabric," because "fringe * * * shall not be required to have had a separate existence from the fabric."

According to Dr. Teper, the main purpose in utilizing fringe is to embellish the article and increase saleability. He agreed that the fringe here is an integral part of the fabric but stated that in his opinion, based on knowledge of the trade, studies of the industry and contacts with manufacturers, it served aesthetic and decorative purposes. He

said that with this particular fabric, wool and mohair, fraying would have been minimal even if there had been no fringe, and fraying could have been prevented by a binder thread or by turning the ends and stitching them down. The reason for using fringe on a scarf, whether or not produced in the process of manufacture of the article, is to provide an additional decorative or ornamental effect.

Mr. Ratner testified that he was familiar with scarves like exhibit 1 and that the fringe gave them an embellishment, an attractive appearance. He said that without the fringe the scarf would look like a plain remnant. The fringe gives it life.

Some testimony was presented during the course of the trial with respect to the so-called leno stitch or leno weave which was used on the sides of the scarf. That stitch or weave was utilized to form a guide when cutting the material lengthwise and also to lock the wefts into place and prevent raveling. There was also evidence that material like exhibit 1 would not fray whether or not there were a leno stitch or weave on the sides or fringe on the ends.

As stated above, at the time when the tariff schedules were being drafted, it had long been held that it was immaterial for tariff purposes, whether fringes constituting part of an article were made in the course of manufacturing the article itself, or made as an independent entity and subsequently attached. *St. Andrews Textile Co., Inc.* v. *United States, supra*, 32 CCPA at 119. According to the Tariff Classification Study, Schedule 3, p. 7, the primary intention of paragraph 1529(a) of the Tariff Act of 1930, under which fringed articles, *inter alia*, were dutiable, was preserved intact in the tariff schedules by the development of a broad concept of ornamentation, but the rates derived from paragraph 1529(a) would apply only if the braids, netting, fringe, etc. were used primarily for ornamentation.

Plaintiff's reading of the statute would not carry out this intent, since it would make a distinction, not previously drawn, between fringe produced in the process of manufacture of a fabric and fringe so produced but to which something additional had been done, such as knotting, tieing, or plaiting. The distinction intended by the statute is between fringe whose primary purpose is ornamentation and fringe which is merely utilitarian or has no commercial significance. *Rifkin Textiles Corp.* v. *United States*, 54 CCPA 138, C.A.D. 925 (1967). This distinction had been made under the Tariff Act of 1930. See *Davies, Turner & Company* v. *United States*, 39 CCPA 76, C.A.D. 466 (1951), and *Arthur J. Fritz & Co., Inc.* v. *United States*, 52 Cust. Ct. 61, C.D. 2437 (1964), where the fringe was had to be utilitarian or insignificant.

In view of the legislative history and the language of the statute, we conclude that fringe, whether or not produced in the course of manu-

facturing the article and whether or not further work has been done to it, constitutes ornamentation within the purview of the tariff schedules, provided its primary purpose is ornamental.

While there is evidence in the instant case that the fringe served to prevent or slow down fraying, the testimony and the sample indicate that its primary purpose was ornamental: to enhance the appearance and aesthetic appeal of the scarf.

For the reasons stated, we hold that the merchandise herein was properly classified under item 372.10, as scarves, ornamented. In the view we take of the case, it is unnecessary to consider the additional point raised by defendant that plaintiff has failed to establish that wool is the component material of chief value of the scarves.

The protest is overruled. Judgment will be entered for defendant.

NEWMAN, Judge:   I concur in the result.