The FERRISWHEEL, Plaintiff,

v.

UNITED STATES, Defendant.

C.D. 4844; Court No. 77–8–02280.

United States Customs Court.

Feb. 21, 1980.

Thomas G. Ferris, pro se.

Alice Daniel, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Field Office for Customs Litigation, New York City (Susan C. Cassell, New York City, at the trial and on the brief), for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of articles of Highland dress imported from Scotland. The articles include two men's kilts made of wool, a Sheriffmuir jacket made from cotton, and an Argyll jacket fashioned from wool.

The wool garments were classified by the customs officials under item 380.02 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, as ornamented men's wearing apparel, of wool. Accordingly, they were assessed with duty at the rate of 42.5 per centum ad valorem. The Sheriffmuir jacket was classified as an article of ornamented men's wearing apparel, of cotton, under TSUS item 380.00, as modified by T.D. 68–9, and was assessed with duty at the rate of 35 per centum ad valorem.

Plaintiff maintains that none of these items is ornamented. Hence, it contends that the wool garments should properly be classified under TSUS item 380.66 with a

duty of 37.5 cents per pound plus 21 per centum ad valorem, and the Sheriffmuir jacket under TSUS item 380.12, as modified by T.D. 68–9, with a duty of 8 per centum ad valorem, as men's wearing apparel, not ornamented.

The pertinent statutory provisions are as follows:

Classified under:

Schedule 3, Part 6, Subpart F:

"Men's or boys' lace or net wearing apparel, whether or not ornamented, and other men's or boys' wearing apparel, ornamented:

| 380.00 | Of cotton ............35% ad val. |
| 380.02 | Of wool ..............42.5% ad val." |

Claimed under:

Schedule 3, Part 6, Subpart F:

"Other men's or boys' wearing apparel, not ornamented:

Of cotton:

| * | * | * | * | * | * | * |
| 380.12 | | | Valued over $4 each ....8% ad val. |

| * | * | * | * | * | * | * |

Of wool:

| * | * | * | * | * | * | * |
| 380.66 | | | Valued over $4 per pound ........37.5¢ per lb. + 21% ad val." |

Schedule 3, headnote 3 of the Tariff Schedules of the United States provides in pertinent part:

"3. For the purposes of the tariff schedules—

(a) the term 'ornamented', as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

(ii) burnt-out lace;

(iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

(iv) applique and replique work, beads, bugles, spangles, bullions, or ornaments; or

(v) any combination of the foregoing types of methods of ornamentation;" (Emphasis added in part.)

At the outset, the court finds that plaintiff has abandoned its claim as to the Argyll jacket. Plaintiff, at the trial, submitted an illustrative exhibit of the wool Argyll jacket. After the trial, however, but before briefs were submitted, plaintiff requested that the exhibit be returned for its personal, temporary use. Defendant acceded to this request on the stipulation that plaintiff return the exhibit contemporaneously with filing its brief, or, failing to do so, abandon that portion of the claim which pertained to the Argyll jacket. Plaintiff agreed to this stipulation. Nevertheless, plaintiff filed its brief without returning the exhibit. It thus abandoned its claim as to the Argyll jacket. Consequently, the customs classification of the Argyll jacket under TSUS item 380.02 is affirmed.

As to the remaining articles, the two men's kilts and the Sheriffmuir jacket, the question presented is whether these garments are "ornamented" for customs duty purposes. Based upon a careful examination of the garments, and the record before the court, it is the determination of the court that they have been properly classified by the customs officials as "other men's or boys' wearing apparel, ornamented", of wool, and of cotton, respectively.

At the trial, plaintiff called four witnesses and introduced five exhibits, illustrative of the garments in question. The defendant did not call any witnesses, but relied upon its cross-examination of the witnesses, and the statutory presumption of correctness which attaches to the classification of the customs officials. 28 U.S.C. § 2635(a); United States v. New York Merchandise Co., Inc., 435 F.2d 1315, 58 CCPA 53 (1970). To overcome this presumption, the plaintiff must prove that the customs

classification was wrong and that its claimed classification is correct. *United States v. New York Merchandise Co., Inc., supra; Technical Tape Corp. v. United States*, 55 CCPA 38, C.A.D. 931 (1968).

The kilts are garments of male attire, similar to skirts, which wrap around the body at the waist and fall to the knee. They are fashioned in wool plaid known as tartan. Traditionally, different tartans distinguished Scottish family clans and militia. Because the wrap of the kilt overlaps across the front of the garment, the front is two pieces thick. The underneath piece attaches at the left hip, and the top piece, or apron, overlaps the underneath piece, and attaches at the right hip. The edge of the apron is fringed from the waist to the knee.

The Sheriffmuir jacket is made of blue cotton velvet. It is a close fitting man's jacket, tapered to the waist, with braided epaulets, stand-up collar, and guantlet cuffs. Pointed double flaps, two sets in the front and two in the back, hang from the waist. A pocket is concealed on the under flap of each of the double sets of flaps in the front of the jacket. On the top flap of all four sets of flaps are three strips of braiding spaced about an inch and a half from one another. At the end of each strip of braid is a silver button. Braid and buttons are similarly affixed to each cuff.

Mr. Thomas G. Ferris, the owner of plaintiff import business, is an attorney. Although not admitted to practice before this court, he appeared *pro se*. He testified that the fringe on the kilts serves to strengthen and protect the edge of the kilt's front piece or apron from wear, and may be replaced, thereby extending the life of the kilt. He explained that centuries ago the fringe resulted from the normal fraying of the fabric. With the invention of the sewing machine and refinement of the kilt, the fringe is now added to the kilt by turning under the front edge of the apron, and sewing two separate pieces of cloth to the turned under edge. These two pieces of cloth, which extend about half an inch beyond the edge, are then raveled to produce the fringe. According to Mr. Ferris, without a fringe a kilt is not authentic, unless it is one of those kilts worn by Highland military regiments which does not have a fringe. Mr. Ferris has never seen a civilian kilt that did not have a fringe.

On cross-examination, Mr. Ferris admitted that he had never replaced a fringe on a kilt, nor had any of his customers ever asked him to replace one. He also testified that women's kilts were identical to men's kilts in all respects except size. In response to questioning he admitted that the fringe on a woman's kilt, though physically like that on a man's, was decorative rather than functional.

As to the Sheriffmuir jacket, Mr. Ferris testified that the epaulets are functional because the left one may be used to secure the plaid, and the right one to secure a sword strap. The plaid is a rectangular length of tartan, worn so that it extends from the left shoulder diagonally across the back, under the right arm and diagonally across the chest to the left shoulder where it is pinned to the epaulet with a large brooch. According to Mr. Ferris, the purpose of securing the plaid to the left epaulet, rather than to the jacket, is to prevent the jacket from being torn should the plaid inadvertently be pulled. Mr. Ferris also testified that the plaid is primarily worn on dress occasions, and that the sword strap is not usually worn, though it may be used for ceremonial purposes.

With reference to the braiding on the jacket, Mr. Ferris admitted that it serves no function but is traditional. He explained that it is intended to give the appearance of ancient style jackets by simulating buttonholes on the cuffs and pocketflaps which were once functional. He noted that in ordering Sheriffmuir jackets he specifies only the name of the jacket, the size and the fabric number. Mr. Ferris indicated that Sheriffmuir jackets always come with braid and button features, and if one came without them he would return it. He explained that his customers are almost exclusively members of Scottish societies, and authenticity is important to these groups. Mr. Ferris also stated that he imported

similar jackets for women, and that on those jackets he considered the braiding to be ornamental.

Plaintiff's second witness was Mr. J. Charles Thompson, an expert on Scottish heraldry and tartans. He testified that he does not believe anyone can explain the origin of the fringe on the kilt, but if the side of the kilt is merely hemmed, the hem very soon may wear through. The witness said he has replaced the fringe on a kilt. Concerning the jacket, Mr. Thompson testified that the epaulets may be used to hold the bonnet when it is not being worn. This use comes from the military. He stated that the buttons and braid are also military features which originated in the latter half of the eighteenth century. Mr. Thompson noted that the plaid is part of formal attire, and should not be worn on all occasions when Highland dress is worn.

Plaintiff's two other witnesses were Mr. William Banks, the manager of a store owned by a Scottish company which manufactures and sells Highland dress, and Mr. William Quay, the owner of a small business which imports Scottish wearing apparel. Mr. Banks testified that women's kilt-like skirts are not traditional garments but that there is no significant difference between the fringing on the woman's garment and that on a man's, other than cost of production. He further testified that the fringing on a woman's kiltlike skirt has an ornamental effect, and that it performs no function.

Mr. Quay testified that in ordering Highland dress he specifies no special features other than color. He has never received a jacket which did not meet accepted standards. Were he to receive one without the traditional epaulets, braid and buttons, he would send it back since it would not be authentic attire. The same would be true of the fringe on a kilt.

The specific customs classification question presented is whether the fringe on the kilts, and the epaulets and braid on the jacket, render the kilts and the jacket "ornamented" under the appropriate provisions of the tariff schedules.

Plaintiff maintains that the imported garments are not ornamented because, 1) the fringe and epaulets are functional, and the braiding, though no longer functional, simulates buttonholes which were once functional, and 2) all of these features are traditional in Highland dress, and, therefore, do not constitute ornamentation.

The defendant asserts that the plaintiff has failed to overcome the presumption of correctness which attaches to the classification of the customs officials. It indicates that whether or not braiding and fringe *per se* constitute ornamentation, headnote 3 of schedule 3 "establishes that braid and fringe are at least among the group of common features which ornament garments." It maintains that the "samples themselves stand as potent witnesses for the Government and dispel any contention that the fringe, braid, and also the epaulets are not decorative embellishments which adorn the garments." The defendant adds that "the fringe, braid, and epaulets are primarily, if not exclusively, decorative."

The law which pertains to the ornamentation of imported garments has been examined in a number of decided cases. *See Excelsior Import Associates, Inc. v. United States*, 444 F.Supp. 780, 79 Cust.Ct. 144 (1977), aff'd, 583 F.2d 513 (Cust. & Pat.App. 1978); *Blairmoor Knitwear Corp. et al. v. United States*, 284 F.Supp. 315, 60 Cust.Ct. 388 (1968); *Baylis Brothers, Inc. v. United States*, 282 F.Supp. 791, 60 Cust.Ct. 336 (1968), aff'd, 416 F.2d 1383, 56 CCPA 115 (1969). These cases have interpreted headnote 3 of schedule 3 which provides that for purposes of the tariff schedules—

"(a) *the term 'ornamented'*, as used with reference to textile fabrics and other articles of textile materials, *means fabrics and other articles* of textile materials *which are ornamented with* —

\* \* \* \* \* \*

(iii) lace, netting, *braid, fringe*, edging, tucking, or trimming, or textile fabric;" (Emphasis added in part.)

They teach that, notwithstanding the headnote language, the addition of lace,

netting, braid, or fringe, for example, would not *per se* render an imported garment "ornamented". Rather, the headnote "sets forth the circumstances under which fabrics and articles may be considered to be ornamented, and the types of embellishments which may accomplish that effect." *Blairmoor Knitwear Corp. et al. v. United States*, 284 F.Supp. 315, 318, 60 Cust.Ct. 388, 392 (1968).

■ In essence, in every case, the basic question is whether the additional materials or features were used primarily for the purpose of ornamentation. If the primary purpose was ornamentation, the imported article or garment has been held to be "ornamented" within the meaning of the tariff schedules. Ornamentation, as distinguished from a utilitarian purpose, implies adornment and embellishment, i. e., an enhancement in appearance and beauty.

■ The cases also teach that the adornment or embellishment accomplished by the addition, such as the braid or fringe in this case, must be more than incidental. However, if the primary purpose of the addition is ornamental, an incidental utilitarian purpose will not prevent the garment from being considered "ornamented" for customs duty purposes. *Inter-Maritime Fwdg. Co., Inc. v. United States*, 69 Cust.Ct. 138, C.D. 4384 (1972). *See also Paramount Bead Corp. et al. v. United States*, 19 CCPA 385, T.D. 45522 (1932); *Arthur J. Fritz & Co., Inc. v. United States*, 52 Cust.Ct. 61, C.D. 2437 (1964). In the present case, therefore, the court must determine whether the fringe, braid and epaulets adorn or embellish the garments, and whether enhancing the beauty and appearance of the garments is their primary purpose.

■ It is often stated in customs law that illustrative exhibits are potent witnesses. *Karoware, Inc. v. United States*, 564 F.2d 77, 65 CCPA 1 (1977); *Marshall Field & Co. v. United States*, 45 CCPA 72, C.A.D. 676 (1958). This is particularly true in a case where the issue is one of ornamentation. *Baylis Brothers, Inc. v. United States*, 282 F.Supp. 791, 60 Cust.Ct. 336 (1968), *aff'd*, 416 F.2d 1383, 56 CCPA 115 (1969).

■ It is clear that the fringe added to the kilts, and the epaulets and braid added to the jacket, embellish and enhance their beauty. Although this cannot be denied, plaintiff contends that these features are only incidentally ornamental, and are primarily functional. The court does not agree.

Plaintiff asserts that the fringe on the kilts is functional because it protects the garment from wear, and allows the fringe to be replaced without discarding the garment. At trial, however, only Mr. Thompson testified that he had ever replaced the fringe on a kilt. Mr. Ferris testified that he had never replaced a fringe, nor been asked to do so by any of his customers. Mr. Banks stated that the fringe performs no function. Mr. Ferris opined that the fringe serves a utilitarian function because it prevents unraveling of the apron edge of the kilt. Close examination, however, will show that, rather than the fringe, it is the stitching over the edge of the apron that prevents unraveling. Additionally, both Mr. Ferris and Mr. Banks testified that they would consider the fringe on a woman's kilt, which is like that on a man's, to be decorative and nonfunctional.

A statement of this court from *Inter-Maritime Fwdg. Co., Inc. v. United States*, 69 Cust.Ct. 138, C.D. 4384 (1972), is particularly applicable here. In the *Inter-Maritime Fwdg.* case the question was whether scarves imported from Scotland, having fringe along the edges, and short, protruding weft threads on the sides, were ornamented. The court wrote:

> "While there is evidence in the instant case that the fringe served to prevent or slow down fraying, the testimony and the sample indicate that its primary purpose was ornamental: to enhance the appearance and aesthetic appeal of the scarf." 69 Cust.Ct. at 144.

From an examination of the kilts and all of the testimony, it is the determination of the court that the fringe is primarily ornamental and only incidentally utilitarian.

It is also the determination of the court that the epaulets and braiding on the Sheriffmuir jacket are primarily ornamental. Plaintiff ascribes three functions to the epaulets: holding the bonnet, securing the sword strap, and securing the plaid in such a manner that, if it is inadvertently pulled, the epaulet will be torn and not the jacket. All of the evidence presented indicates conclusively that these functions are not so important to the jacket as the decorative and ornamental effect created by the epaulets. Protecting the jacket from being torn by an accidental pull on the plaid is, at best, incidental, and not the primary function of the epaulets. The witnesses testified that the epaulets were of military origin and were used to hold plaid, sword and bonnet. Other testimony establishes clearly that plaid, sword and bonnet are not proper attire for all occasions on which Highland dress is worn. On most occasions when the jacket is worn the epaulets perform none of these functions. From all of the evidence the court concludes that the epaulets are not functional, and are retained primarily for their ornamental and decorative value.

Plaintiff does not claim that the braiding on the flaps and cuffs of the jacket is functional. Since it is agreed that the braid serves no function, other than ornamentation, the braiding renders the jacket ornamented for tariff purposes irrespective of any alleged functions performed by the epaulets.

■ Plaintiff nevertheless contends that the fringe, braid and epaulets, whether or not currently functional, are traditional features of Scottish Highland dress, and that, therefore, articles of Highland dress decorated with these additions are excluded from being classified as "ornamented" for tariff purposes. In support of this assertion, plaintiff cites agency rulings in which the Customs Service has allowed particular garments with traditional features to be classified as "not ornamented". Even if the agency rulings cited by plaintiff suggest a different result in this case, and the court is not persuaded that they do, agency rulings are not binding on this court. *Ditbro Pearl*

*Co., Inc. v. United States*, 515 F.2d 1157, 62 CCPA 95 (1975); *C.J. Tower & Sons v. United States*, 33 Cust.Ct. 14, C.D. 1628 (1954). Here, the customs officials have decided that the garments under consideration do not fall within the narrow exceptions that may have been allowed. Moreover, the classifications enjoy a presumption of correctness.

Although not cited by the parties, the court has also examined customs classification decisions which dealt with the importation of certain ornamental costumes or apparel as "regalia". *Leo J. Doyle v. United States*, 44 Cust.Ct. 426, Abs. 64081 (1960); *Duquesne University Tamburitzans v. United States*, 41 Cust.Ct. 372, Abs. 62355 (1958); *Railway Express Agency v. United States*, 36 Cust.Ct. 452, Abs. 59971 (1956). These cases have considered the interpretation and application of paragraph 1773 of the Tariff Act of 1930, the predecessor provision to TSUS item 851.30. These provisions pertain to the duty-free importation of "regalia" by narrowly defined religious or other institutions. It is to be noted, however, that both under paragraph 1773 and the present provision, it is stated that the term "regalia" does not include regular wearing apparel. Moreover, plaintiff clearly does not qualify as one of the institutions enumerated under these provisions. The existence of the provisions indicates that Congress has considered the importation of traditional attire and, in some instances, has chosen to treat it specially. The present case, however, is not one of those instances.

In substance, plaintiff urges the court to hold that garments, having clearly ornamental features which may be traditional, are classifiable as "not ornamented" because the ornamentation is necessary to make the garment authentic. The court has found no statutory or decisional authority for such a holding. Traditional features, such as the fringe, braid and epaulets, are retained when no longer functional because they enhance the aesthetic appeal and beauty of the garment. When features, whether or not traditional, are added to a garment primarily for purposes of dec-

oration and ornamentation, the garment is "ornamented" within the meaning of the tariff schedules.

In view of the foregoing, it is the determination of the court that the kilts and the Sheriffmuir jacket were properly classified by the customs officials as ornamented men's wearing apparel of wool, and of cotton, respectively. The customs classification is, therefore, sustained, and the complaint is dismissed.

Judgment will be entered accordingly.