**HAMPSHIRE MANUFACTURING CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 82–8–01088.

United States Court of International Trade.

July 16, 1987.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr., New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Kenneth N. Wolf, New York City, for defendant.

## OPINION

TSOUCALAS, Judge:

This action, challenging the appraisal of certain rubber and nylon hi, boots and chest high waders by the Customs Service, is before the Court on cross-motions for summary judgment pursuant to USCIT R. 56. Plaintiff, Hampshire Manufacturing Corporation (hereinafter "Hampshire"), and defendant, the United States, have submitted the case for decision on a stipulation of facts, which serves as the "short and concise statement of the material facts" not in dispute required by USCIT R. 56(i).

### Background

The subject merchandise, imported from Korea, was entered in July, 1980, and was properly classified under item 700.60, TSUS. Plaintiff had imported similar mer-

chandise since 1976 which had been uniformly appraised on the basis of export value in the amount of invoice unit value, less any included non-dutiable charges, net, packed. Contrary to this past practice, Customs appraised the instant merchandise on the basis of American selling price (hereinafter "ASP").[1]

Customs had informed another importer, Rettinger Raincoat Manufacturing Co. (hereinafter "Rettinger"), by amended notice dated May 3, 1979, that a certain style of its imported footwear would not be valued under ASP. On June 1, 1979, Servus Rubber Co. (hereinafter "Servus"), a domestic footwear producer, sought to initiate an internal advice proceeding pursuant to 19 C.F.R. § 152.24(c)(5) (1986) to review the decision not to apply ASP to Rettinger's imports. Customs Headquarters informed the New York Area Director that the Rettinger product should be appraised in conformity with ASP. Customs ultimately determined that the effective date for applying ASP appraisement would be May 14, 1980.

Plaintiff seeks reliquidation of the entries with appraisal to be based on export value. Its sole claim for the purpose of the motion for summary judgment concerns the legal significance of Customs' failure to notify it of the internal advice proceeding initiated at the request of Servus. All other claims raised in the complaint have been abandoned. Specifically, plaintiff no longer argues that its merchandise had been the subject of a "uniform and established practice" within the meaning of 19 U.S.C. § 1315(d) (1982). *Stipulation in Court No. 82–8–01088* at 2 ¶ 8 (hereinafter "Stipulation at ___"). Nor does plaintiff press its earlier contention "that its domestically produced merchandise was more similar to the imported merchandise than was the domestic merchandise produced by Servus Rubber Co. upon which the appraisements were based." *Stipulation* at 7 ¶ 20.

**1.** The definitions of export value and American selling price are provided in subsections (d) and (g), respectively, of 19 U.S.C. § 1402 (1976). The repeal of § 1402 and the complete revision of § 1401a were consequences of the enactment

## The Parties' Claims

According to plaintiff, Customs was required by the terms of § 152.24(c)(5) to provide it with timely notice of the commencement of the aforementioned internal advice proceeding. The parties agree, *Defendant's Response to Plaintiff's Motion for Summary Judgment* at 1, that at the time it "first heard of a possible change in dutiable treatment of its imported merchandise on or about May 21, 1980, Plaintiff had already contracted to purchase the involved merchandise." *Stipulation* at 3 ¶ 11. Plaintiff assumes that Customs applied the results of the proceeding involving Rettinger and Servus to its imports. Although Hampshire does not inform the Court when it contracted to purchase the subject merchandise, it suggests that had it been aware of this proceeding at its inception (and the attendant possibility of a change in the method of valuation), then it would not have contracted to purchase the merchandise, thereby avoiding the substantial increase in duties assessed upon importation as a result of the application of ASP valuation.

Defendant admits that the Customs Service did not advise plaintiff of the existence of the internal advice proceeding. *Stipulation* at 3 ¶ 10. It contends, however, that § 152.24(c) does not contemplate notification of importers in the position of Hampshire. Accordingly, in defendant's view, Customs did not violate the applicable regulation, and there is no basis for this Court to order reliquidation of the subject entries.

## Pertinent Regulation

At all relevant times, 19 C.F.R. § 152.-24(c) has provided in part:

(c) *Determination of American selling price of footwear classifiable under item 700.60, Tariff Schedules of the United Stats—(1) Submission of samples, catalogs, and price lists by domestic producers.* In order to ensure consideration of their merchandise in making a determination regarding the exist-

of new statutory standards for appraising the value of imported merchandise. *See* Trade Agreements Act of 1979, Pub.L. 96–39, title II, § 201, 93 Stat. 144, 194 (1979). These changes have no bearing on this case.

ence or nonexistence of an American selling price, domestic producers of footwear of the same class or kind as that classifiable under item 700.60, Tariff Schedules of the United States (19 U.S.C. 1202), shall furnish the Area Director, New York Seaport Area, with all catalogs and price lists covering such footwear. If any catalogs or price lists furnished to the Area Director have been revised or amended, such revisions or amendments shall be forwarded promptly to the Area Director, New York Seaport Area. At the request of the Area Director, New York Seaport Area, domestic producers shall furnish samples of footwear of the same class or kind as that provided for in item 700.60. Accompanying the catalogs and price lists shall be a certification by the domestic producer, in substantially the following form, verifying that the footwear products covered are freely offered for sale for domestic consumption at the prices shown:....

(2) *Submission of samples by importers.* Importers of footwear classifiable under item 700.60, Tariff Schedules of the United States, shall furnish the appropriate Customs officer at the port of entry with a sample from the first commercial shipment of each model or style of such footwear imported into the United States. The samples will then be forwarded to the Area Director, New York Seaport Area, for determination of the American selling price.

(3) *Notification of Area Director's determination.* When the Area Director, New York Seaport Area, has determined the American selling price applicable to a particular sample, or has determined that the footwear is not like or similar to a domestic product and therefore not subject to appraisement on the basis of American selling price, he shall notify the importer and domestic producers of the same class or kind of footwear, or their representatives, of this determination. He shall not provide information with respect to the manufacturer, importer, or price of the imported product.

(4) *Examination of samples.* Within 30 days of notification of the Area Di-

rector's determination in regard to the applicability of an American selling price, the importer and domestic producers (or their representatives) shall have an opportunity to examine representative samples of the footwear submitted by the importer and domestic producers which were considered by the Area Director in making his determination.

(5) *Request by importer or domestic producers that the Area Director seek internal advice.* The importer or domestic producers may, if they disagree with the Area Director's determination regarding the applicability of an American selling price, request that the Area Director seek internal advice from Headquarters, United States Customs Service, in accordance with the procedures set forth in § 177.11 of this chapter, provided the request by the importer or the domestic producers is received within 30 days of notification of the Area Director's determination. When one party in interest (either the importer or the domestic producers) seeks internal advice from Headquarters, Customs shall notify the other party in interest of that action.

### Discussion

### I

■ Section 152.24(a)(3) of Title 19 of the Code of Federal Regulations explains that ASP, where determinable, is to be applied to footwear provided for in item 700.60, TSUS. The procedure for determining ASP is provided in § 152.24(c).

Subsection (c)(1) states in pertinent part that "[i]n order to ensure consideration of their merchandise in making a determination" as to the applicability of ASP valuation, "domestic producers of footwear of the same class or kind as that classifiable under item 700.60 [TSUS] shall furnish the Area Director, New York Seaport Area, with all catalogs and price lists covering such footwear." Subsection (c)(2) provides that "[i]mporters of footwear classifiable under item 700.60 [TSUS] shall furnish ... a sample from the first commercial shipment of each model or style of such footwear imported into the United States." Af-

ter a decision as to the applicability of ASP is made by the Area Director, "he shall notify the importer and domestic producers of the same class or kind of footwear, or their representatives, of this determination." § 152.24(c)(3). "The importer or domestic producers" may contest the decision regarding the applicability of ASP. "When one party in interest (either the importer or the domestic producers) seeks internal advice from Headquarters, Customs shall notify the other party in interest of that action." § 152.24(c)(5). In the instant case, it appears that Rettinger submitted samples as provided for in § 152.24(c)(2). Servus requested that the Area Director seek internal advice, pursuant to § 152.-24(c)(5), ostensibly after receiving notification, in accordance with § 152.24(c)(3), of the Area Director's decision not to apply ASP to Rettinger's merchandise.

Hampshire interprets the reference to "the importer or domestic producers" in subsections (c)(3) and (c)(5) as encompassing all importers of such merchandise. The Court declines to adopt this construction of the regulation. Plaintiff's construction is contrary to the clear language of the regulation. The reference throughout § 152.-24(c) is to "the importer" and to "domestic producers." The process envisioned by the regulation involves a determination as to the applicability of ASP to a "particular sample," § 152.24(c)(3), of footwear provided by a particular importer. The importer who provides such a sample and domestic producers of the same class or kind of footwear are entitled to notice under subsections (c)(3) and (c)(5). If the regulation contemplated the same broad right to notice for all importers, as is plainly accorded to domestic manufacturers, such a right would have been clearly provided for.

Hampshire was entitled to an evaluation of its merchandise by the Area Director only if in compliance with subsection (c)(2) which requires an importer to submit samples from the "first commercial shipment of each model or style of such footwear imported into the United States." Hampshire would have been entitled to notice of the resulting determination under subsection (c)(3), and it could have requested that the Area Director seek internal advice pursuant to subsection (c)(5). There is no suggestion, however, that this regulatory scheme provides for notice to Hampshire of the proceeding involving Rettinger's goods.[2]

Our conclusion is bolstered by consideration of 19 C.F.R. § 177.11 (1986) which sets forth procedures for obtaining internal advice from Customs Headquarters, and which is specifically referred to in § 152.-24(c)(5). That regulation states in part that "[a]dvice or guidance will be furnished by the Headquarters Office as a means of assisting Customs personnel in the orderly processing of Customs transactions under consideration by them and to ensure the consistent application of the Customs and related laws in the several Customs districts." § 177.11(a). The regulation further provides that "[a]dvice furnished by the Headquarters Office in response to a request therefor represents the official position of the Customs Service as to the application of the Customs laws to the facts of a specific transaction." § 177.-11(b)(6). Absent reconsideration, the advice will be applied in the disposition of the "Customs transaction in question." *Id.* *See also* § 177.9(c) (in discussing the effect of "ruling letters" defined in § 177.1(d)(1), the regulation states that "no other person

---

**2.** The Court's interpretation of the regulation also has the potentially salutary effect of relieving Customs from the task of notifying all importers of merchandise similar to that which is the subject of the internal advice proceeding. Given the lack of comprehensive briefing by the parties on this issue, the Court is reluctant to offer a sweeping pronouncement concerning the hardship faced by Customs in attempting to identify all such importers. Nevertheless, the approach endorsed by the Court's chosen construction appears consistent with that elsewhere preferred by the regulation; to wit, it places the burden on the private party—be it the importer or the domestic producer—to come forward on its own initiative and provide Customs with the materials necessary to arrive at a determination. *See* § 152.24(c)(1) ("[i]n order to ensure consideration of their merchandise," domestic producers are directed to submit catalogs and price lists); § 152.24(c)(2) (importers shall furnish to Customs samples from shipments of footwear into the United States).

should rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any other transaction other than the one described in the letter"). Nowhere is there a suggestion that the internal advice process was designed to be a forum for the adversarial presentation of views among all parties dealing in the type of merchandise which is the subject of the internal advice request.

■ Once it is established that the relevant regulation does not mandate that notice be given to Hampshire in the instant case, plaintiff's other arguments are easily refuted. As a general proposition, it may be true that "mandatory regulations have been held to be binding alike on importers and on Government officials...." *Armour & Co. v. United States*, 29 Cust.Ct. 296, 301, C.D. 1482 (1952). As stated earlier, however, the Court finds no violation of the applicable regulation.[3] Plaintiff's attempt, *Plaintiff's Motion for Summary Judgment* at 16, to draw an analogy between the notice required by § 152.24(c) and the "advance notice" required by 19 U.S.C. § 1315(d) (1982) in the case of a uniform and established practice is unpersuasive. As plaintiff may have implicitly recognized by abandoning its § 1315(d) claim,[4] there can be no uniform and established practice with regard to appraisement. *See Peugeot Motors of America, Inc. v. United States*, 8 C.I.T. 167, 171, 595 F.Supp. 1154, 1157 (1984). Nor is there any basis upon which the government can

be equitably estopped from applying ASP valuation to plaintiff's merchandise. Even if plaintiff could otherwise establish that the traditional elements of estoppel exist in this case, the law is apparently clear in this Circuit that "no equitable estoppel can arise against the government in connection with an obligation to pay taxes." *United States v. Federal Ins. Co.*, 805 F.2d 1012, 1013 (Fed.Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987); *Air-Sea Brokers, Inc. v. United States*, 66 C.C.P.A. 64, 68, C.A.D. 1222, 596 F.2d 1008, 1011 (1979) (equitable estoppel is "not available against the Government in cases involving the collection or refund of duties on imports").[5]

## II

Plaintiff further contends that, apart from the interpretation adopted of § 152.24(c), "fairness" requires that if Customs chose to apply the results of the Rettinger proceeding to plaintiff's merchandise, then it should have informed Hampshire of this decision. In this vein, plaintiff suggests:

> If Customs chose to treat plaintiff as a party in interest for purposes of applying the result of the internal advice [proceeding], it should have also treated plaintiff as a party in interest for purposes of the procedural safeguards in section 152.24(c) of the regulations.

> . . . .

---

3. The Court is aware of a letter signed on behalf of the Assistant Commissioner of Commercial Operations of Customs and addressed to Senator Warren B. Rudman of New Hampshire. *Stipulation*, Attachment H. That letter contains, *inter alia*, a limited and ambiguous discussion of the notice provisions of § 152.24(c). Its content need not be analyzed, since the Court believes—and plaintiff does not argue otherwise—that such communication, even if it amounts to an agency ruling, is not binding on this Court. *See Ferriswheel v. United States*, 84 Cust.Ct. 61, 69, C.D. 4844, 489 F.Supp. 263, 268 (1980), *aff'd in part and rev'd in part on other grounds*, 68 C.C.P.A. 21, C.A.D. 1260, 644 F.2d 865 (1981).

4. As explained earlier, the parties have stipulated that Customs determined that there is no "established and uniform practice" in the instant case and that plaintiff does not contest that determination herein. *Stipulation* at 2 ¶ 8.

5. It has been observed that the availability of estoppel against the sovereign is an open question. *Old Republic Ins. Co. v. United States*, 10 C.I.T. ——, ——, 645 F.Supp. 943, 946 n. 5 (1986) (citing *Heckler v. Community Health Services*, 467 U.S. 51, 60 & n. 12, 104 S.Ct. 2218, 2224 & n. 12, 81 L.Ed.2d 42 (1984), *reh'g denied*, —— U.S. ——, 106 S.Ct. 1289 (1986)). Nonetheless, it is clear that estoppel may not be invoked against the government on the same terms as against private litigants. *United States v. Locke*, 471 U.S. 84, 112, 105 S.Ct. 1785, 1802, 85 L.Ed.2d 64 (1985) (O'Connor, J., concurring). The Federal Circuit, in dictum, may have recognized that equitable estoppel might arise against the government in "extraordinary circumstances." *Federal Ins. Co.*, 805 F.2d at 1016.

Why was it necessary or proper, in Customs view, to apply the outcome of the Internal Advice proceeding involving Rettinger [sic] importations to Plaintiff at all? It appears that Customs simply decided to treat all hip boots and chest high waders as a generic category, as in the case of a chemical, without reference to all of the different styles, qualities, prices, features, etc. of the various commercial suppliers. If this was the theory upon which Customs acted, it is clear that they considered Plaintiff to be lumped together with Rettinger Raincoat Co., and presumably other companies, as a party in interest. If this is the case, then there can be no excuse for not giving Plaintiff the notice to which it was entitled as a party in interest.

*Plaintiff's Motion for Summary Judgment* at 14–15.

Initially, the Court notes that it is not clear that Customs simply applied the results of the internal advice proceeding involving Servus to Hampshire's importations. The defendant denied this allegation at the pleading stage.[6] The stipulation, which states that "[t]o the extent necessary the pleadings heretofore filed are deemed to be amended to conform to this Stipulation," *Stipulation* at 7 ¶ 21, does not discuss this issue. In any event, the Court need not resolve this factual question, since no right of notice would accrue to Hampshire even if Customs applied the results of the Rettinger/Servus proceeding to plaintiff's merchandise.

To the extent that the present argument represents a variation on plaintiff's earlier theme, it must fail. The Court adheres to

its holding that the regulation at issue does not provide for notice to parties such as Hampshire. Accordingly, this Court fails to perceive any basis upon which it may legitimately "create" such a right of notice. If plaintiff believed that ASP was incorrectly applied, then its remedy was to protest the appraisement and then to offer facts demonstrating that the appraisement of its merchandise was erroneous. Despite moving for summary judgment, plaintiff offers nothing to suggest that there is even a triable issue—much less that it should be awarded judgment as a matter of law—with regard to the propriety of the instant appraisements. As mentioned earlier, Hampshire withdrew its argument to the effect that the prototype allegedly used by Customs is less similar to the subject merchandise than other merchandise produced domestically. *Stipulation* at 7 ¶ 20. Nor does plaintiff argue that ASP is *per se* inapplicable to its goods because there is no similar, domestically produced merchandise. Indeed, to quote plaintiff's counsel:

Plaintiff's claim is based *entirely upon its explicit rights to notice and hearing* provided, one way or the other, under 19 C.F.R. 152.24(c).... [T]he claim here is based upon the highly specific and unique procedures established for potential ASP footwear under 19 C.F.R. 152.-24(c). If Plaintiff had imported any other type of merchandise and all the other facts were the same, Plaintiff concedes that it cannot imagine any cause of action. However, because Plaintiff imported merchandise classifiable under Item 700.60, Plaintiff was given special rights by 19 C.F.R. 152.24(c), and the Govern-

---

6. Plaintiff's Complaint in Court No. 82–8–01088 provides in part:

14. The Customs Service failed to follow 19 C.F.R. 152.24 in that it did not advise the importer of the pendency of "internal advice" proceeding no. 135/78 [sic] even though the administrative decision therein is the basis of the appraisements contested herein.

15. The appraised values are based upon products manufactured domestically by Servus Rubber Company even though equally or more similar articles were domestically manufactured and freely sold and offered by Hampshire Manufacturing Corporation and, therefore, if American Selling Price appraise-

ment is proper, it should have been based upon the Hampshire product.

Defendant's Answer in Court No. 82–8–01088 provides in part:

14. Denies.

15. Admits that Internal Advice Request No. 135/79 was the internal reference number assigned to an administrative proceeding leading to an administrative ruling issued under the procedure outlined in 19 C.F.R. § 152.-24(c)(5). Denies any implication that the American Selling appraisements at issue herein were based upon that administrative proceeding.

ment was given corresponding obligations which were violated in this case. *Plaintiff's Reply Brief* at 6–7 (emphasis added). Plaintiff's contention, although fully considered, has been rejected. A different result is suggested neither by plaintiff's appeal to notions of fairness, nor by its attempted invocation of the Court's equitable powers.

Consistent with the foregoing, the Court holds that, as a matter of law, Customs did not violate its regulations and there is no basis upon which to overturn the liquidation of the subject merchandise. Therefore, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and plaintiff's claim is dismissed.