Allerton deC. Tompkins, New York City, for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Bernard J. Babb, trial attorney), for defendant.

**BLAIRMOOR KNITWEAR CORP., Leading Forwarders, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Protest 65/22950–18713–64; C.D. 3396.

United States Customs Court
Second Division.

April 9, 1968.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

The plaintiffs herein filed suit against the United States seeking a refund of duties alleged to have been erroneously assessed and paid on several importations of woolen sweaters from Spain. This merchandise was classified as ornamented wearing apparel, knit, of wool, under item 382.03 of the Tariff Schedules of the United States and duty was levied thereon at the rate of 42.5 per centum ad valorem.

It is the contention of the plaintiffs that the merchandise should be properly classified as knitted wool wearing apparel, not ornamented, valued over $5 per pound, under item 382.57 of said

tariff schedules and, accordingly, dutiable at the rate of 20 per centum ad valorem plus 37.5 cents per pound.

The pertinent provisions of the Tariff Schedules of the United States read as follows:

Item 382.03 Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented . 42.5% ad val.

Other women's, girls', or infants' wearing apparel, not ornamented:

\*        \*        \*        \*        \*        \*

Of wool:
    Knit:

\*        \*        \*        \*        \*        \*

Other:

\*        \*        \*        \*        \*        \*

Item 382.57            Valued over $5 per pound .... 37.5¢ per lb. + 20% ad val.

---

At the trial of the instant case, the plaintiffs introduced into evidence the testimony of two witnesses and several exhibits. It was established by a stipulation between counsel for the respective parties that the articles in litigation are in chief value of wool and are valued at over $5 per pound.

One of the plaintiffs' witnesses, Mr. Leon A. Messing, testified that he is the president of the plaintiff Blairmoor Knitwear Corp. and is in charge of managing the business, which is concerned with importing, manufacturing and selling sweaters. The witness testified that he had been in the ladies' garment business since 1929. During a visit to Spain in 1963, he purchased the sweaters in issue, after having seen them produced. Mr. Messing identified the samples of the sweaters in question which, he stated, varied only in type of crochet stitch. He explained that, in the course of production, handmade crocheted rosettes are joined together to form an outer shell, and an inner open knit lining is attached inside the rosette shell. Along the perimeter of the sweater, a crocheted finishing edge was used to join the knit lining and the crocheted shell. The witness further testified that the sweaters in issue could not be utilized or considered complete without the crocheted finishing edge.

A second witness, Mrs. Annette Feldman of New York City, who was shown to have contributed design styles to many major American knitting wear and fashion magazines, testified for the plaintiffs as an expert in the field of sweater needlework design. She stated that crocheting is art needlework with the use yarn and a single needle with a hooked end. According to Mrs. Feldman, the outer shell of the merchandise at issue was composed of hand crocheted stitching in several combinations with a like combination of hand crocheted edging used to finish, join, and complete the articles in a manner of design consistent with their general motif. This witness was of the opinion that the picot or shell stitch used to join the lining to the outer shell was functional because its primary purpose was to secure the two items, and it was not inconsistent with the general impression of the sweater design. She acknowledged, however, that depending

upon the garment itself, and its use, a picot or shell stitch might well be ornamental. She was also of the opinion that a smooth joining of the lining and shell could not be effected without some type of crochet stitch.

Under cross-examination, the witness admitted that the sequence of stitches used upon the edge was not the same in each of the several samples, but she thought the selection was purely arbitrary.

The defendant submitted the testimony of Mr. Raymond McCaughey, an assistant professor at the Fashion Institute of Technology,[1] who described his duties as primarily those of teaching, research in industrial technology, and coordinating evening knitting programs. He testified that the edging on the merchandise at issue served both to join and to decorate and that there were a number of other acceptable methods to join the parts of the sweaters which would not ornament them. Particularly for the reason that there were simpler methods available to unite the sweater parts, it was his opinion that the crocheted edge constituted ornamentation.

In conclusion the witness stated that, notwithstanding that crochet stitches can vary from the strictly functional to the ornamental and that the difference is one of degree for the most part, the stitching on the merchandise at bar was both ornamental and functional.

Although it is apparent that the sweaters are in themselves patently ornamental, the question which we are called upon to determine herein relates, not to the sweaters, but to the finishing edge used to join the two components together. It is whether this edge makes the articles in question ornamented within the intendment of the tariff schedules.

The term in issue is "ornamented". It is defined in Schedule 3, Headnote 3

of the Tariff Schedules of the United States as follows:

For the purposes of the tariff schedules—

(a) the term *"ornamented,"* as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

(ii) burnt-out lace;

(iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

(iv) applique and replique work, beads, bugles, spangles, bullions, or ornaments; or

(v) any combination of the foregoing types or methods of ornamentation;

(b) ornamentation of the types or methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

(ii) after it had been made or cut to a size for particular furnishings, wearing apparel, or other article, or

(iii) after it had actually been incorporated into another article, and if such textile fabric remains visible, at least in significant part, after ornamentation: *Provided,* That lace, netting, braid, fringe, edging, tucking, trimming or orna-

ment shall not be required to have had a separate existence from the fabric or other article on which it appears in order to constitute ornamentation for the purposes of this headnote; and

(c) applique work, beads, bugles, spangles, bullions, and other forms of nontextile ornamentation applied to a textile fabric or other article of textile materials shall be disregarded in determining the component material of chief value of such fabric or other article.

It is contended by the plaintiffs that the border on the imported merchandise does not ornament the articles in question but rather completes and finishes them, and they furthermore urge that it is not an edging which is included in the statutory definition of "ornamented" as cited above.

While it is true, as pointed out by the Government, that the crocheted stitching at the outer edges of the garment constitutes an edging, it does not necessarily conclude the issue, nor are we compelled to repudiate plaintiffs' contention simply because the statute does not require a preexistence or separate existence of the edging material.

The controlling word in the provision invoked for the classification of these sweaters, and in the Headnote applicable thereto, is the word "ornamented", and whether or not the sweaters at bar are ornamented by the edgings must be the first and principal focus of our attention.

At this juncture, it is pertinent to observe that while the Headnote to which we have herein referred purports to define the term "ornamented", it does not actually do so. Instead it sets forth the circumstances under which fabrics and articles may be considered to be ornamented, and the types of embellishments which may accomplish that effect. As is evidenced by the introductory language, the emphasis is upon the article to be adorned or embellished, not the substantive matter of what constitutes ornamentation in the first instance.

As we view the Headnote explanation in the light of the situation at bar, fabrics and articles may be considered to be ornamented if they are embroidered or if ornamental threads other than one row of functional stitching are introduced in or upon them or if an ornamental edging is attached. But it remains to be determined what constitutes ornamentation in the first instance.

Reference to the Tariff Classification Study Schedule 3, Explanatory Notes, complied by the United States Tariff Commission for use by Congress in its preparation of the tariff schedules reveals that provisions for ornamented articles derive from a consideration of paragraph 1529(a) of the Tariff Act of 1930. In connection therewith the following is stated:

Under the proposed definition of "ornamented", textile articles would no longer be assessed with rates of duty derived from paragraph 1529(a) on the basis of concealed, functionless pieces of braid, netting, etc. The rates derived from paragraph 1529(a) would apply only if such materials were used primarily for ornamentation.

The intent to make adornment the primary objective of ornamentations is thus evidenced. It is clear both by this express statement and the exclusion in Headnote 3(a), supra, of "functional stitching" that, in employing the word "ornamented", Congress did not attempt to label all braid, or all fringe, or all edging, for example, ornamentation, but only such as in fact served to provide a decorative effect.

It remains to be determined, therefore, whether qualities contributed by the edgings are ornamental or functional. Plaintiffs contend that the sweaters are not ornamented; counsel for defendant urges otherwise. In support of the classification, counsel for the Government alludes to the fact that the edging has a definite pattern or design which it is contended would be an adornment as determined in the case of Clover Linen

Corp. v. United States, 32 Cust.Ct. 1, C.D. 1572. There the merchandise was beige crocheted pot holders with a green or blue or red colored crocheted edge. It was classified as articles in part of edging within the purview of paragraph 1529(a) of the Tariff Act of 1930, and was claimed to consist of knit articles within paragraph 917 of said act. Although the plaintiff had endeavored to establish that the colored edges were necessary to prevent unraveling and only incidentally for "eye appeal", the court found that the body of the article could be secured with a locked stitch, and a complete functional pot holder would result, and that the colored edging, which also had to be secured with a locked stitch to prevent unraveling, was of a fancy pattern or design which ornamented the pot holder.

This decision seems clearly distinguishable from the instant case. Here, the parts of the sweater were joined at the edge with a variation of crochet stitches similar to those stitches joining the rosettes together. The color of the edging used here was the same as the body of the sweater parts. The stitch at the edge joined the sweater parts to finish the product. The mere fact that a simpler crochet stitch might have been employed does not provide a basis for concluding that the use of any other stitch constitutes an ornamentation. Indeed, the outer shells of these sweaters are themselves so decorative that the stitches, which have been employed to join the linings, are scarcely distinctive. That, under certain circumstances, a picot or a shell stitch creates an ornamental edging does not necessarily entail that every picot or shell stitch edging is ornamental.

Moreover, a distinction must be drawn between that which finishes, joins, serves a utilitarian purpose, and only incidentally ornaments, and that which primarily adorns, embellishes, or ornaments.

This distinction is brought out in the case of Gimbel Bros., Inc. v. United States, 27 Cust.Ct. 371, Abstract 56124, wherein was involved an importation of beaded handbags, classified under paragraph 1529(a) of the Tariff Act of 1930, as modified by prevailing trade agreement, as articles in chief value of beads, ornamented with beads, and claimed to be beaded articles, not ornamented within paragraph 1503 of said act, as modified. It appears that the articles in issue were constructed by shaping a metal frame with holes, meant to be completed by affixing to them, either beads or other material chosen by the manufacturer. The frame was unfinished and could not be sold without the beads. This court held, under authority of United States v. Saks & Co., 13 Ct.Cust.Appls. 367, T.D. 41259, that the articles were not ornamented with beads by virtue of the fact the beads were used as a component material in the manufacture of an ornamental object. It was further stated that an article so composed, however ornamental in character, would not be considered an ornamented article when the component claimed to constitute the ornamentation is a material and necessary portion of the article itself, without which there would be no article.

Here, a similar situation exists. The record conclusively demonstrates that the edging was an integral and essential part of the article. Without a crocheted edging used to join and finish the sweater there would be no sweater. The article could not be worn without a lining nor could the lining be worn without the outer shell. The edging served the object of joining and finishing the inner and outer portion of the garment smoothly and in keeping with the overall motif. The edging was not added to an otherwise complete article. It is a component material of a manufactured article. The exhibits themselves readily emphasize that the edge construction is a continuation of the basic construction of the articles themselves.

Of similar import is the case of Paramount Bead Corp., Walter A. Yokel v. United States, 19 CCPA 385, T.D.

45522. There it was held by our appellate court that articles, such as beaded lamp pulls used for turning on and off electric lights, which are primarily utilitarian and only incidentally ornamental, could not be classified as ornaments within the purview of paragraph 1430 of the Tariff Act of 1922 since their utilitarian function precluded such a finding. The court further held that, since the beads were used to compose the articles, which would otherwise be incomplete and unfit for the purpose for which they were designed and intended to be used, they did not ornament the articles. In short, the lamp pulls basically served a utilitarian purpose, and were composed of, not ornamented by, beads.

Here, the crocheted edge serves the utilitarian purpose of joining the sweaters without disrupting the design features. The theme of the articles in question is initiated with the crocheting of the individual rosettes, then continued by a joining of the crocheted rosettes in the form of a sweater body, and finally concluded by an edging uniting the garment to the inner knit lining of the sweater.

Clearly, the articles in question are not ornamented within the definition and character of that word as used in the Tariff Schedules of the United States, nor as interpreted under the Tariff Act of 1930 and its predecessors, as indicated in Paramount Bead Corp., supra. The word "ornament" has customarily been construed in accordance with its dictionary meaning, to embrace that which enhances, embellishes, decorates, or adorns. See also, United States v. Florea & Co., Inc., 25 CCPA 292, T.D. 49396; F. W. Myers & Co. (Inc.) v. United States, 16 CCPA 171, T.D. 42794; Absorbo Beer Pad Co. Inc. v. United States, 30 CCPA 24, C.A.D. 209. When viewed in that sense, the joining edge here in question would not be considered ornamentation.

For the reasons herein stated, we hold the merchandise at bar identified as invoice item 303, to be women's woolen knitwear, not ornamented, within the purview of item 382.57 of the Tariff Schedules of the United States and, accordingly, dutiable at the rate of 20 per centum ad valorem plus 37½ cents per pound. The claim in the protest is sustained to the extent indicated. It appearing that plaintiffs have abandoned their claim with respect to the sweaters identified as invoice item 305, all claims with respect thereto are hereby dismissed.

Judgment will be entered accordingly.

FORD, J., concurs.