The FERRISWHEEL, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 80–28.

United States Court of Customs and Patent Appeals.

March 12, 1981.

Joseph S. Kaplan, Lance E. Tunick, New York City, Thomas G. Ferris, pro se, for appellant.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, New York City, Director, Joseph I. Liebman, New York City, Attorney in charge, for appellee; Sidney N. Weiss, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the judgment of the United States Customs Court (now the United States Court of International Trade), 84 Cust.Ct. ——, C.D. 4844, 489 F.Supp. 263 (1980), as amended by order dated July 28, 1980, sustaining the classification of articles of Scottish Highland dress

as ornamented wearing apparel. We affirm in part and reverse in part.

### The Imported Merchandise

The merchandise in question consists of two men's kilts made of wool, one man's Sheriffmuir jacket made of cotton, and one man's Argyll jacket made of wool, imported by appellant from Scotland in 1975 and 1976.

### Statutory Provisions

The kilts and the Argyll jacket were classified by the Customs Service officials under item 380.02 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, as men's wearing apparel, ornamented, of wool. The Sheriffmuir jacket was classified under TSUS item 380.00, as modified by T.D. 68–9, as men's wearing apparel, ornamented, of cotton.

Appellant contends that none of the imported merchandise is ornamented, and that the kilts and Argyll jacket should properly be classified under TSUS item 380.66, and the Sheriffmuir jacket under TSUS item 380.12, as modified by T.D. 68–9.

The relevant tariff provisions read as follows:

Classified under:

Schedule 3, part 6, subpart F:

Men's or boys' lace or net wearing apparel, whether or not ornamented, and other men's or boys' wearing apparel, ornamented:

| | | |
|---|---|---|
| 380.00 | Of cotton | 35% ad val. |
| 380.02 | Of wool | 42.5% ad val. |

Claimed under:

Schedule 3, part 6, subpart F:

Other men's or boys' wearing apparel, not ornamented:

Of cotton:

\* \* \*

| | | |
|---|---|---|
| 380.12 | Valued over $4 each | 8% ad val. |

\* \* \*

Of wool:

\* \* \*

| | | |
|---|---|---|
| 380.66 | Valued over $4 per pound | 37.5¢ per lb. + 21% ad val. |

Schedule 3, headnote 3 reads in pertinent part:

3. For the purposes of tariff schedules—

(a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

\* \* \* \* \* \*

(iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

\* \* \* \* \* \*

(b) ornamentation of the types or methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

(ii) after it has been made or cut to a size for particular furnishing, wearing apparel, or other article, or

(iii) after it had actually been incorporated into another article,

and if such textile fabric remains visible, at least in significant part, after ornamentation: *Provided,* That lace, netting, braid, fringe, edging, tucking, trimming or ornament shall not be required to have had a separate existence from the fabric or other article on which it appears in order to constitute ornamentation for the purpose of this headnote; \* \* \*.

### Court of International Trade

The classification by the Customs Service arises from the presence on the jackets of braid sewn on the cuffs and pocket flaps and also from the presence of epaulets, on one jacket of cloth and on the other of braid. The kilts have the familiar self-fringed edge on the apron.

Appellant argues that the fringe and epaulets are functional features in the sense of being utilitarian and that the braid is used to simulate buttonholes which are functional features. Further, these fea-

tures should be deemed functional since they are necessary to give the garments authenticity.

The Court of International Trade upheld the classification, finding the fringe and epaulets to be only incidentally functional and the braid to be without any function. The court concluded:

> In substance, plaintiff urges the court to hold that garments, having clearly ornamental features which may be traditional, are classifiable as "not ornamented" because the ornamentation is necessary to make the garment authentic. The court has found no statutory or decisional authority for such a holding. Traditional features, such as the fringe, braid and epaulets, are retained when no longer functional because they enhance the aesthetic appeal and beauty of the garment. When features, whether or not traditional, are added to a garment primarily for purposes of decoration and ornamentation, the garment is "ornamented" within the meaning of the tariff schedules.

## OPINION

We agree with the rejection by the court below of the premise that garments having clearly ornamental features are classifiable as "not ornamented" because the ornamentation is necessary to make the garments authentic. Appellant has cited nothing in the statute or in precedent supporting its position, and we do not find its arguments compelling. Thus, we begin from the point that authentic Highland dress must be judged by the same standards as other articles of wearing apparel.

### The Argyll and Sheriffmuir Jackets

■ We agree with the court below that the jackets are ornamented by braid on the sleeves and on the pocket flaps. The braiding is clearly "ornamental work done to a pre-existing fabric" (Schedule 3, Headnote 3(b)) and, admittedly, performs no function. Moreover, although some of the braid is located where buttonholes would be located, the extent of the braid negates an assertion that the braid simulates buttonholes. To a large extent, the braid is purely decorative.

In view of our conclusion that the jackets are ornamented by the braiding on the sleeves and pocket flaps, it would ordinarily be unnecessary to decide whether the jackets are further ornamented by epaulets. However, since the Customs Service has announced that it is reconsidering its classification of other garments in light of the court's ruling on this point,[1] we will address this issue.

The court below concluded that the epaulets on the jackets which were originally functional were infrequently used for their intended purpose and, therefore, the epaulets were primarily retained for decorative effect. We disagree. Functional features do not lose their functionality because they may not actually be used by most wearers. If this were the test, the functionality of features on garments could only be determined after their sale to the public.

The record establishes that the epaulets on jackets of the types here imported were affixed for functional purposes. The left epaulet is designed to be used to fasten a plaid[2] to the shoulder. The right epaulet is intended to hold a sword belt. An epaulet may also be useful to hold a bonnet. Such uses need not occur every time such a jacket is worn. A belt does not lose its essentially functional character by being left unfastened. It is functional capability, together with the appropriateness of that function to the garment, which determines whether or not it is functional. There is credible undisputed testimony here that both epaulets continue to serve their intended purposes, at least when the jackets are worn on ceremonial occasions. These facts are sufficient to negate that the epaulets are retained primarily for decorative reasons, since there are times when the utility of the epaulets is essential.[3]

---

1. 45 Fed.Reg. 54,085 (1980).

2. A plaid is a rectangular length of tartan, worn on the left shoulder.

3. At oral argument appellant admitted that Argyll and Sheriffmuir jackets have always been classified as ornamented for tariff purposes and that by classifying the entries presently before

*The Kilts*

We agree with appellant that the fringe on the subject kilts is primarily functional. Thus the garments are not ornamented.

There is no dispute that the lapped edge of the apron of the kilt requires some type of finishing to prevent it from unravelling. From our examination of the garment, it is apparent that this edge would be likely to wear more quickly than other exposed edges and is subject to particular stress from the straps and buckles which are affixed to hold the front apron in place. Appellee, having conceded that some reinforcement is required to finish the edge along the front lap, argues that a row of stitching along this length performs adequately.

The testimony of Mr. Ferris, who is the president of appellant, is persuasive that the addition of two pieces of fabric to the edge of the apron "is to thicken and protect the edge of the kilt from wear." Appellee offered no evidence to the contrary and it is, in any event, self-evident from the style of the garment. Appellee argues, in effect, that the extra reinforcement is unnecessary. Were we to accept the Government's position, it would not matter, logically, whether the material added were fringed or not. The addition of any material along the vertical edge of the top apron would be ornamentation since stitching alone could perform the function. The test, however, is not whether the added fabric is necessary, but whether it is primarily functional. *Endicott Johnson Corp. v. United States*, 617 F.2d 278 (CCPA 1980).

The conclusion that adding *fabric* at the apron edge is functional does not, however, resolve the issue of the fringe. The further testimony of Mr. Ferris is that after the extra fabric is affixed to the apron, that fabric is fringed by removing a few threads. Is the resultant fringe primarily ornamental or functional?

The trial court correctly noted that the presence of fringe would not *per se* render an imported garment "ornamented" despite the language of Schedule 3, Headnote 3. We start with a presumption that visible fringe is to some extent ornamental. We also recognize that fraying the edge of a fabric to create a self-fringe can be a functional alternative to hemming a cut edge, thereby eliminating the inherent bulkiness of a hem. The fringe in issue functions in such manner. Without the fringe, the cut edges of the added fabric would have to be hemmed in order to prevent uncontrolled fraying. We conclude, therefore, that the fringe here is functional in addition to being decorative.

In deciding which is its primary purpose, the controlling consideration then becomes the actual appearance of the fringe. On the kilts here in question it is only by close examination that one would be aware of the presence of fringe. The fringe on one of the added pieces is approximately ⅛″ wide and on the other less than ¼″. The pattern of the fringe matches that in the fabric of the kilt. The decorative effect is thus minimal, and we conclude that functionality is its primary purpose. We cannot distinguish the use of fringe here from the use of a decorative but primarily functional edging on sweaters found to be non-ornamental in *Blairmoor Knitwear Corp. v. United States*, 60 Cust.Ct. 388, 284 F.Supp. 315 (1968), or the decorative but primarily functional extra stitching on shoe uppers in *Endicott Johnson*, supra.

To reiterate, we do not hold that self-fringing a raw edge in place of hemming makes the fringe primarily functional. Fringe can be so created that it would be primarily decorative, for example, because of its length or because it is tied into a

this court as ornamented, the Customs Service did *not* change its classification practices with respect to such garments. Accordingly, appellant's due process argument is without merit. Also, its allegation that the Customs Service did not comply with 19 U.S.C. § 1315(d), relating to procedures for establishing a higher rate of duty by administrative ruling, is without foundation in the record and was not raised below. We will not consider this allegation raised for the first time on appeal. *International Seaway Trading Corp. v. United States*, 61 CCPA 20, 24–25, 488 F.2d 544, 547 (1973).

pattern. Here, the amount of fringe created is minimal (in this case, the fringe is no more than the width of the smallest hem which it would be possible to make), and it is used where a hem would be required. We conclude that this fringe is primarily functional and only incidentally decorative.[4]

### CONCLUSION

The judgment of the court below upholding classification of appellant's imported Argyll and Sheriffmuir jackets under items 380.02 and 380.00, TSUS, respectively, is *affirmed*. The judgment upholding classification of the imported kilts under item 380.-02, TSUS, is *reversed*. The subject kilts are classifiable under item 380.66, TSUS.

---

4. Appellee argues that Mr. Banks, an expert witness for appellant, admitted that on kilt-like skirts for women, similar to the imported kilts in appearance, the fringe constituted ornamentation. We do not place that interpretation on Mr. Banks' testimony. The thrust of Mr. Banks' testimony, as well as that of Mr. Ferris, was that women's kilt-style skirts were not traditional. Therefore, the argument could not be made that the fringe should be considered an inherent part of a standard authentic garment. Since we reject that argument as to men's kilts as well, this testimony with respect to women's kilts is irrelevant.