BRITTANIA SPORTSWEAR (A DIVISION OF SCHOENFELD INDUSTRIES, INC.), PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 81-1-00109, etc.

(Decided May 11, 1983)

*Rode and Qualey (Michael S. O'Rourke* at the trial and on the brief) for the Plaintiff.

*J. Paul McGrath,* Assistant Attorney General, (*Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, and *Deborah E. Rand* at the trial and on the briefs) for the Defendant.

WATSON, *Judge:* This action places in issue the classification of imported merchandise consisting of several styles of jeans, which

have a single fabric loop on their sides at the hip. The jeans were classified under items 380.00 [1] (men's) or 382.00 [2] (women's), Tariff Schedules of the United States (TSUS), as modified by T.D. 68-9, as men's or women's wearing apparel, ornamented, of cotton.

Plaintiff claims that the loops do not render the articles "ornamented" within the meaning of the TSUS and that the articles should therefore be classified as men's or women's wearing apparel, not ornamented, of cotton, under items 390.39 [3] (men's) or 382.33 [4] (women's) TSUS.

Headnote 3 to Schedule 3 of the TSUS provides:

3. For the purposes of the tariff schedules—

(a) the term *"ornamented,"* as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

(ii) burnt-out lace;

(iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

(iv) applique and replique work, beads, bugles, spangles, bullions, or ornaments; or

(v) any combination of the foregoing types of methods of ornamentation;

(b) ornamentation of the types of methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

---

[1] Men's or boys' lace or net wearing apparel, whether or not ornamented, and other men's or boys' wearing apparel, ornamented:
Item 380.00        Of cotton .......................................................................................... 35% ad val.
[2] Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented:
Item 382.00        Of cotton .......................................................................................... 35% ad val.
[3] Other men's or boys' wearing apparel, not ornamented:
    Of cotton:
        Not knit
Item 380.39        Other .............................................................................................. 16.5% ad val.
[4] Other women's, girls, or infants' wearing apparel, not ornamented:
    Of cotton:
        Not knit
Item 382.33        Other .............................................................................................. 16.5% ad val.

(ii) after it has been made or cut to a size for particular furnishing, wearing apparel, or other article, or

(iii) after it had actually been incorporated into another article,

and if such textile fabric remains visible, at least in significant part, after ornamentation: *Provided,* That lace, netting, braid, fringe, edging, tucking, trimming or ornament shall not be required to have had a separate existence from the fabric or other article on which it appears in order to constitute ornamentation for the purposes of this headnote; and

(c) applique work, beads, bugles, spangles, bullions, and other forms of nontextile ornamentation applied to a textile fabric or other article of textile materials shall be disregarded in determining the component material of chief value of such fabric or other article.

The basic question is whether or not these articles are "ornamented" within the meaning of the Tariff Schedules. A focus on the existence of an ornamental effect is the first step required by the clear language of the statute and the pertinent legislative history.[5]

At the very start, the Court finds that the loops on these jeans do not visibly adorn, embellish, decorate or beautify the jeans.

The loops are small; they are made of the same material as the garment, and they are stitched in the same manner. They are plain, insignificant and unobtrusive in appearance. It is unreasonable to say that they adorn, beautify or enhance the appearance of the article in a manner that conforms to ordinary concepts of ornamentation.

Ordinarily, upon finding that the feature in question does not cause the article to be ornamented, the Court would proceed no further. However, the Court wishes to elaborate upon its rejection of defendant's assertions that unless a feature is demonstrably functional, it must, ipso facto, be ornamental.

As our Appellate Court has stated:
The first question is: Does the addition of [the feature] impart no more than an incidental, decorative effect? The next question is: Do the [features] have a functionality which is primary to any ornamentive nature? An affirmative answer to either results in a nonornamental classification. If the former is resolved first, the latter may no longer be critical to a determination.

\*         \*         \*         \*         \*         \*         \*

\* \* \* neither did Congress intend that all [features] be per se ornamental unless proved to have a function. If the importer,

---

[5] "Under the proposed definition of "ornamented," textile articles would no longer be assessed with rates of duty derived from paragraph 1529(a) on the basis of concealed, functionless pieces of braid, netting, etc. The rates derived from paragraph 1529(a) *would apply only if such materials were used primarily for ornamentation.*" U.S. Tariff Commission, Tariff Classification Study, schedule 3, p. 7 (1966) [emphasis added].

by a preponderance of the evidence proves any ornamentive aspects to be incidental, added proof of functionality is not mandated.

*United States* v. *Endicott Johnson Corp.* 67 CCPA 47, 50 C.A.D. 1242, 617 F.2d 278, 281 (1980).

The statute and the legislative history require that the first inquiry be whether the feature has an ornamental effect. If the feature does not visibly adorn, embellish, decorate or beautify the garment, the inquiry proceeds no further and the garment is properly classified as not ornamented. Only if the feature is visibly ornamental should we proceed to determine whether the feature possesses functionality to which the ornamental character is merely incidental, thus avoiding classification as "ornamented."

The cases cited by the defendant do not support the proposition that functionality is the first test of whether a garment is ornamented. Functional analysis became important in *Ferriswheel* v. *United States,* 68 CCPA 21, C.A.D. 1260; 644 F.2d 865 (1981) only after it was first recognized that the epaulets on a jacket and the fringe on a kilt had a discernible decorative effect. See also *Bayliss Brothers, Inc.* v. *United States,* 56 CCPA 115, C.A.D. 964; 416 F.2d 1383. Here, the initial perception of ornamental qualities is entirely lacking and the question of functionality need not be reached.

In the case of *Sportswear International Ltd.* v. *United States,* 4 CIT 260 (1982), where certain loops caused a garment to be considered ornamented, it must either be presumed that a finding was made *sub silentio* that the loops possessed a distinctive ornamental effect or that the holding diverges somewhat from the principles enunciated in *Endicott Johnson.*

In any event, the evidence before the Court establishes that the loops are functional in origin,[6] in capability and in actual use. Therefore, even if the Court were to find that the loops possessed some ornamental character, the primarily functional nature of this feature would result in proper classification of the articles as "not ornamented."

Nonetheless, defendant also claims that loops originally designed to hold tools automatically cease to be "functional" on garments whose fabric weight, color and marketing might cause them to be worn as other than workclothes. This extremely restrictive view finds no support in the statute of the legislative history. Our Appellate Court has stated: "Functional features do not lose their functionality because they may not actually be used by most wearers. If this were the test, the functionality of features on garments could only be determined after their sale to the public." *Ferriswheel* v. *United States,* 644 F.2d at 867.

For these reasons, the correct classification of these articles is as men's and women's wearing apparel, not ornamented, of cotton, under Items 380.39 and 382.33, TSUS.

Judgment will enter accordingly.

---

[6] They were designed to hold tools.