GELMART INDUSTRIES INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 83–3–00383.

United States Court of International Trade.

Feb. 3, 1987.

Mandel & Grunfeld, New York City, Steven P. Florsheim, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Paula N. Rubin, New York City, for defendant.

## OPINION AND ORDER

TSOUCALAS, Judge:

Plaintiff challenges the classification of seven different styles of brassieres [1] each containing some element of lace. The merchandise, exported from the Philippines, and entered through the Port of New York

---

1. Originally, plaintiff also contested the classification of an eighth model, #3892 (Plaintiff's Exhibit 4). However, before trial, defendant conceded that the proper classification was under item 376.28, as claimed by plaintiff, and consented to judgment in plaintiff's favor.

in 1981, was classified by Customs under item 376.24, TSUS:

Corsets, girdles, brassieres, and similar body-supporting garments for women and girls; . . . all the foregoing of any materials:

Lace or net articles, whether or not ornamented, and other articles, ornamented ......................... 32% ad val.

Defendant contends style nos. 3511, 3590, 3665 (Plaintiff's Exhibits 1–3) are lace articles; and style nos. 3032, 3364, 3703 and 3952 (Plaintiff's Exhibits 5–8), are ornamented. Plaintiff alleges that the brassieres in issue are neither lace nor ornamented, and should be classified under item 376.28, TSUS:

Corsets, girdles, brassieres, etc.

Other articles, not ornamented .............. 18% ad val.

At trial, the lone witness, presented by plaintiff, was Mr. Sumner Spivack, associated with Gelmart Industries brassiere department for 20 years. As Coordinator of Corporate Affairs, Mr. Spivack participates in, and coordinates, the design, production, sales, marketing and import of plaintiff's brassieres. His experience includes working with 1,000 different models of brassieres over the years. He testified as to the different types of brassiere construction, which include: strapless, full figure, contour, molded, seamcups and stretch. Tr. at 14. The materials used in brassiere construction include polyester cotton, lace, tricot, Simplex; and in marketing, brassieres are categorized by material: lace, tricot or Simplex. Tr. at 14.

A sample of each brassiere style in issue was introduced into evidence. On Exhibits 1 and 2, the upper cup is composed of a lace insert, which connects the frame to the lower cup. Mr. Spivack stated that Simplex is the major component of these garments. Exhibit 3 contains stretch lace in the top cup connecting the top frame with the bottom cup, and the witness identified Techsheen, or tricot (stretch fabric) as the major component. Tr. at 24. On Exhibits 5, 7, and 8, there is scalloped lace, and on Exhibit 6, there is a strip of lace, present along the upper edge of each top cup. This latter exhibit also contains lace along the outer edge of each cup, connecting the back panel to the cups.

## DISCUSSION

The headnote to Schedule 3, under which items 376.24, and 376.28 appear, defines a lace article as:

2. (h) . . . an article which (exclusive of any added ornamentation) is wholly or almost wholly of lace, including burnt-out lace, . . . whether the lace or net pre-existed or was formed in the process of producing the article.

The relevant General Headnote to the TSUS is:

9. *Definitions.*

(f)(ii) "wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present;

The tariff term "almost wholly of" was interpreted in *United China & Glass Co. v. United States,* 61 Cust.Ct. 386, C.D. 3637, 293 F.Supp. 734 (1968). In applying the definition in General Headnote 9(f), the court stated that "[t]he character of an article is that attribute which strongly marks or serves to distinguish what it is. Its essential character is that which is indispensable to the structure, core or condition of the article, i.e., what it is." 61 Cust.Ct. at 389, 293 F.Supp. at 737. In that instance, a glass water ball, with an inset of plastic decorative flowers set on a base, was not almost wholly of plastic. The court held that it was the glass ball which was indispensable and distinguishing since the plastic flowers could easily be substituted; but without the glass ball, the flowers and base were without utility. *Id.*

In an attempt to sharpen this analysis, it has been stated that discernment of the essential characteristic may:

be found in concentrating on whether the material in question supplies the distinctive feature of the article and not in examining all the characteristics of the article and, if some other material con-

tributes important characteristics, declining to give one material the primacy which its role deserves....

Therefore, the existence of other materials which impart something to the article ought not to preclude an attempt to isolate the most outstanding and distinctive characteristic of the article and to detect the component material responsible for that "essential characteristic."

*Canadian Vinyl Industries, Inc. v. United States,* 76 Cust.Ct. 1, 2–3, C.D. 4626 (1976), *aff'd,* 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977).

■ The issue in this case, therefore, is whether the lace provides the essential characteristic to the brassieres and makes them what they are. Of the styles considered by Customs to be of lace (Exhibits 1, 2 and 3), the lace inserts comprise the top cup of the brassieres. The major components of the articles are the Techsheen and Simplex (the stretch material). Notwithstanding the significant quantities of these materials, can it be said that the lace is the outstanding and distinctive attribute of these garments: are these lace brassieres? According to Mr. Spivack, in the industry, lace brassieres consist of full cups of lace. Tr. at 25. These articles do not meet that standard. Furthermore, Mr. Spivack stated that the purpose of a brassiere is to give support, and to contain and shape a woman's breasts. Tr. at 22. The lace is not the component responsible for these functions. As to Exhibits 1–3, the witness identified the bottom cup, bands, frames and back panels as providing the major sources of support. Tr. at 23–24.

Defendant argues that the lace distinguishes these particular styles from other types of brassieres, citing *A.N. Deringer, Inc. v. United States,* 66 Cust.Ct. 378, C.D. 4218 (1971). Children's waterproof snowsuits consisting of an outershell of neoprene waterproof coated nylon and a quilted lining, were distinguishable by their water resistant quality. While the quilted lining supplied warmth to the wearer, an important characteristic of a snowsuit, the added feature which furnished the essential characteristic to the article was its water resistance.

No doubt the articles here in issue are more appealing to the eye than are brassieres without lace. However, it does not follow that because the lace is visually distinctive, it provides the essential characteristic. *Cf. Larry B. Watson Co., A/C Decoration Products Co. v. United States,* 64 Cust.Ct. 343, C.D. 4001 (1970). Defendant maintains that the lace brassieres are a more attractive, and thus more marketable item; therefore, this is the essential characteristic since the lace causes the consumer to purchase these styles. Nonetheless, the Court is mindful of Mr. Spivack's testimony that a prettier garment would likely sell more "as long as it does the function it's supposed to do." Tr. at 49. Clearly, the function of the garments, for support and shape, is not provided by the lace. Thus, when other components of the article provide equally essential aspects, the court should decline to characterize this one component as imparting the essential character to the garments. *Marshall Co., Inc., et al. v. United States,* 67 Cust.Ct. 316, 324, C.D. 4291, 334 F.Supp. 643, 648–49 (1971); *accord Oak Laminates v. United States,* 8 CIT 175, 182, 628 F.Supp. 1577, 1583 (1984). Therefore, the lace is not *the* essential characteristic of Exhibits 1–3. These styles cannot be classified as lace articles within the meaning of that term under item 376.24.[2]

The second issue is whether Exhibits 5–8 are ornamented as a result of the lace edging. Headnote 3 to Schedule 3, TSUS, sets forth the relevant criteria for ornamentation:

3. (a) the term *"ornamented",* ... means fabrics and other articles of textile materials which are ornamented with—

\*  \*  \*  \*  \*  \*

**2.** Defendant concedes that the articles are not "wholly of lace" and they do not meet the defini-

tion in General Headnote 9(f)(ii).

(iii) *lace,* netting, braid, fringe, edging, tucking, or trimming, or textile fabric; [emphasis added]

\* \* \* \* \* \*

(b) ornamentation of the types or methods covered ... consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

(ii) after it had been made or cut to a size for particular furnishings, wearing apparel, or other article, or

(iii) after it had actually been incorporated into another article,

and if such textile fabric remains visible at least in significant part, after ornamentation: *Provided,* That lace, netting, ... shall not be required to have had a separate existence from the fabric or other article on which it appears in order to constitute ornamentation for the purposes of this headnote;

The focus is not on whether the lace is ornamental, but rather whether the addition of lace makes the brassieres an ornamented fabric in an accepted trade sense. *Excelsior Import Associates, Inc. v. United States,* 79 Cust.Ct. 144, 147, C.D. 4726, 444 F.Supp. 780, 782 (1977), *aff'd,* 66 CCPA 1, C.A.D. 1212, 583 F.2d 513 (1978). "[T]he emphasis is upon the article to be adorned or embellished, not the substantive matter of what constitutes ornamentation in the first instance." *Blairmoor Knitwear Corp. v. United States,* 60 Cust.Ct. 388, 392, C.D. 3396, 284 F.Supp. 315, 318 (1968). Further, it is the resultant effect upon the merchandise and not the subjective motivation of the importer which controls classification of the article. *Excelsior,* 79 Cust.Ct. at 148, 444 F.Supp. at 783.

■ The presence of lace per se does not constitute ornamentation. Rather, the application of a two step analysis set forth in *United States v. Endicott Johnson Corp.,* 67 CCPA 47, C.A.D. 1242, 617 F.2d 278 (1980), determines whether an article is ornamented for tariff purposes. The first question is: Does the addition of the feature impart no more than an incidental decorative effect? The second inquiry is whether the feature has a functionality which is primary to any ornamentive nature. An affirmative response to either results in a nonornamental classification, and resolution of the first inquiry may eliminate the necessity of the second. 67 CCPA at 50, 617 F.2d at 281. The issue as to the ornamental effect is a question of fact and if the importer proves by a preponderance of the evidence that the ornamental aspects are incidental, no additional proof of functionality is needed. *Id.* *See also Tariff Classification Study,* Schedule 3, Textile Fibers and Textile Products, Explanatory and Background Materials at 6–7 (primary purpose of the decorative feature must be for ornamentation).

■ Clearly, an examination of the garments reveals that the lace provides more than an incidental decorative effect. Each style, (Exhibits 5–8) contains scalloped lace or a strip of "dainty lace", extending approximately one half to one inch from the end of the stretch material, trimming the edge of each cup. This provides a sharp contrast to the stretch material or nylon composing the remainder of the garment. Ornamentation has been construed to embrace that which enhances, embellishes, decorates, or adorns. *Blairmoor,* 60 Cust.Ct. at 395, 284 F.Supp. at 320. The scalloped lace certainly embellishes and adorns the brassieres by adding eye appeal. The question therefore, is whether this lace serves a utilitarian function which is primary to its ornamentive aspects.

As the court in *Blairmoor* stated, "a distinction must be drawn between that which finishes, joins, serves a utilitarian purpose, and only incidentally ornaments, and that which primarily adorns, embellishes, or ornaments." 60 Cust.Ct. at 393, 284 F.Supp. at 319. In that instance, crochet stitches used to finish the edge of a sweater and connect it to the knitted lining did not constitute ornamentation. It was held that the edging was an integral part of the sweater since neither the outer shell nor the lining could be worn alone. Similarly, in *The Ferriswheel v. United States,* 68 CCPA 21, C.A.D. 1260, 644 F.2d 865

(1981), fringe on the edge of the merchandise was primarily functional to prevent unraveling. It was evident that the cut edges of the merchandise needed some form of finishing to prevent fraying.

Plaintiff's witness testified that the lace serves a similar purpose in that it finishes the edges of the cups and in some styles, connects the component parts of the brassieres, or helps contain the breast. The witness further concluded that there was no distinction between Exhibits 5–8, and Exhibit 4, which the government conceded was not ornamented. However, in determining whether the primary purpose of the lace is ornamentation or functionality, the controlling consideration is the actual appearance of the decorative material. *Ferriswheel*, 68 CCPA at 26, 644 F.2d at 868. The fringe in that case was less than one quarter inch wide, matched the fabric of the garment, and was noticeable only upon close inspection. *Id.* The fringe was indistinguishable from the edging in *Blairmoor*, where the crochet stitches were similar in kind and color to those used in the sweater, which was so decorative in itself, that the stitches were scarcely distinctive. 60 Cust.Ct. at 393, 284 F.Supp. at 319. The same cannot be said of the lace on these brassieres. While the lace may provide functionality in that some material was necessary to finish the edges, and to complete and connect the cups for proper support, the lace is patently distinctive from the rest of the garment. *See Brittania Sportswear v. United States*, 5 CIT 212, 214 (1983).

There is no question that other material could have been used instead of the lace, but as the witness stated, this material was chosen because it "looked better". The Court is mindful that the test for ornamentation is not whether the added fabric is necessary, *Ferriswheel*, 68 CCPA at 25, 644 F.2d at 868; nor is it per se ornamentation because a simpler fabric might have been used. *Blairmoor*, 60 Cust. Ct. at 393, 284 F. Supp. at 319. Nonetheless, the evidence demonstrates that the *primary* purpose of the lace is for its ornamental effect while serving an incidental utilitarian function. *See The Baylis Bros. Inc. v. United*

*States*, 56 CCPA 115, 117, C.A.D. 964, 416 F.2d 1383, 1384–85 (1969). Therefore, the merchandise represented by plaintiff's exhibits 5–8 are properly classified under item 376.24, TSUS.

## CONCLUSION

As to those entries represented by style nos. 3511, 3590, and 3665, classified by Customs under item 376.24, TSUS, plaintiff has overcome the presumption of correctness attaching to the Customs' decision. The Court is persuaded that the lace is not the essential characteristic of the brassieres. Therefore, these entries must be classified under item 376.28, TSUS. However, in reference to style nos. 3032, 3364, 3703, and 3952, plaintiff has failed to demonstrate that the lace is either incidentally decorative, or primarily functional. The Customs' classification of these styles under item 376.24, TSUS, as ornamented articles, is thus affirmed. Judgment will enter accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein, now, in conformity with said decision

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the imported merchandise representative of style nos. 3892, 3511, 3590, and 3665 are properly classifiable under item 376.28, TSUS, and it is further

ORDERED, ADJUDGED and DECREED: that the United States Customs Service shall reliquidate the entries covering styles nos. 3892, 3511, 3590, and 3665 under item 376.28, TSUS, with the duty at the rate prevailing at the time of entry, and shall refund any excess duties paid together with interest, as provided by law, and it is further

ORDERED, ADJUDGED, and DECREED: that with respect to style nos. 3032, 3364, 3703, and 3952, the merchandise is properly classified under item 376.-

24, TSUS, and plaintiff's claim with respect to these entries be and hereby is dismissed.